**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
**DALE GROUP, INC.,**               :
                                    :
                                    :
         **Plaintiff,**             :
                                    :    Civil Action No. 12-492 (ES)
    **v.**                          :
                                    :    **OPINION**
**HCC SURETY GROUP,**               :
                                    :
                                    :
         **Defendant.**             :
_____ :

**SALAS, DISTRICT JUDGE**

Plaintiff Dale Group, Inc. ("Dale Group") originally brought this action in state court, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with economic advantage, and negligence. (D.E. No. 1, Ex. A). Defendant HCC Surety Group ("HCC") removed the action to this Court based on diversity jurisdiction. (D.E. No. 1). HCC subsequently filed an Answer and Counterclaim for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. (D.E. No. 7). Pursuant to Federal Rule of Civil Procedure 56, HCC now moves for summary judgment in its favor on Counts One and Three of its Counterclaim and for summary judgment dismissing Dale Group's Complaint with prejudice. (D.E. No. 39). Additionally, HCC moves to strike the proposed expert report of Floyd C. Reynolds III, an expert for Dale Group. (*Id.*). For the reasons set forth below, the Court concludes that HCC is entitled to summary judgment on Count One of the Counterclaim as well as to summary judgment dismissing Dale Group's

Complaint with prejudice.[1]

## I. Factual and Procedural Background

Through various affiliates, HCC underwrites and issues surety bonds in New Jersey and other states. (D.E. No. 39-2, Def.'s Statement of Undisputed Material Facts Pursuant to L.Civ.R. 56.1 ("Def. 56.1 Statement") ¶ 1).[2] Dale Group is an insurance agency that procures various insurance products, including surety bonds, for its clients. (*Id.* ¶ 2).

Dale Group and HCC entered into a written agency agreement dated June 1, 2005 (the "Agency Agreement" or the "Agreement"). (*Id.* ¶ 3). The Agreement provides that it "is governed by, and shall be interpreted in accordance, with the laws of the State of California." (D.E. No. 40, Declaration of Scott D. Baron ("Baron Decl.") Ex. A ("Agency Agr.") ¶ 19).

By its express terms, the Agency Agreement replaced and superseded all previous agency agreements executed between the parties, including a prior agency agreement dated October 24, 2002 (the "2002 Agreement"). (Def. 56.1 Statement ¶ 4). Lionel Jorge, the President and CEO of Dale Group, signed the Agency Agreement and initialed each page of the Agreement. (*Id.* ¶ 5).

Pursuant to the Agreement, HCC appointed Dale Group as its agent for purposes of soliciting and submitting surety bond applications. (*Id.* ¶ 6). The Agency Agreement was "non-

---

[1] Because the Court grants HCC's motion for summary judgment dismissing Dale Group's Complaint with prejudice, HCC's motion to strike Dale Group's proposed expert report is denied as moot. Likewise, because the Court grants summary judgment to HCC on Count One of its Counterclaim, HCC's motion for summary judgment on its declaratory judgment claim is denied as moot.

[2] As the Court noted during oral argument on January 14, 2015, Dale Group's 56.1 Statement does not comply with Local Civil Rule 56.1(a) because it does not responsively address the paragraphs set forth within HCC's 56.1 Statement. (*See* Oral Arg. Tr. at 2:19-22); *see also* L.Civ.R. 56.1(a) (providing that summary judgment opponents must "furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute"). Accordingly, the facts set forth in HCC's 56.1 Statement are undisputed and accepted as true for purposes of this summary judgment motion. (*See* Oral Arg. Tr. at 3:1-4); *see also* L.Civ.R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *Schwartz v. Hilton Hotels Corp.*, 639 F. Supp. 2d 467, 469 n.2 (D.N.J. 2009) ("The Court deems undisputed each statement that [the summary judgment opponent] neither admitted nor denied . . . .").

exclusive," thus allowing HCC to utilize other agents and permitting Dale Group to conduct business with other surety companies. (*Id.* ¶ 7). The Agency Agreement authorized Dale Group to issue and execute HCC surety bonds, but only within certain defined limits set by HCC and subject to HCC's underwriting terms and conditions. (*Id.* ¶ 8). Pursuant to the Agency Agreement, all underwriting criteria and decisions were vested solely with HCC, and it was within HCC's sole discretion to change its underwriting standards at any time. (*Id.* ¶ 9). Furthermore, the Agency Agreement vested all bond claim handling and decisionmaking authority with HCC, leaving Dale Group with no claim handling or settlement authority. (*Id.* ¶ 10).

The Agency Agreement included the following termination clause:

> **Termination.** Either party may terminate this Agreement, with or without cause, at any time by notice in writing directed to the other party, such termination to be effective on the other party's receipt of such termination notice. Termination shall not relieve either of us of obligations incurred prior to the effective date of termination.
>
> THE PARTIES ACKNOWLEDGE AND ACCEPT THE RISK INHERENT IN THE FOREGOING PROVISION.

(*Id.* ¶ 11).

The Agency Agreement made clear that it could be "changed, altered, or modified only in writing signed by both parties." (*Id.* ¶ 12). Furthermore, the Agreement contained the following integration clause:

> **Complete Agreement.** This Agreement and any addendum hereto contains the entire agreement between you and us, and supersedes all previous and contemporary agreements, whether oral or written, . . . .

(*Id.*).

The Agency Agreement also included an Agent Participatory Rider (the "Rider"). (*Id.* ¶ 13). The Rider specified that it "shall replace any previously dated Riders regarding participatory arrangements," and thus it replaced an earlier rider attached to the 2002 Agreement.

3

(*Id.* ¶ 14). Pursuant to the profit and loss sharing formula (the "ACF Formula") set forth in the Rider, HCC and Dale Group would share in both the profits and losses on the bonds issued. (*Id.* ¶ 13). Specifically, the ACF Formula provided as follows:

> I. Premiums earned for the quarter (unearned premiums at the beginning of the quarter, plus gross written premiums for bonds with effective or renewal dates during the quarter, less unearned premiums at the end of the period) *shall be used to settle the following expenses and costs:*
>
> > (a) Other Underwriting and Administrative Expenses – 34%.
> > (b) Unallocated Loss Adjustment Expenses ["LAE"] – 5%.
> > (c) Margin – 15%.
> > (d) U.S. Small Business Administration ("SBA") Bond Guarantee Charges as Incurred by the Company.

(Agency Agr. at 11, ¶ I) (emphasis added and some formatting alterations). The remaining amount would then be placed into an Agent's Contingency Fund ("ACF"), which would be used to settle the following items:

> (a)   Commissions Paid;
> (b)   Losses and Allocated LAE;
> (c)   Other Costs.

(Def. 56.1 Statement ¶ 15). If, after these deductions, the ACF balance was positive, then HCC would distribute that amount (minus 20% of gross unearned premiums) to Dale Group. (*Id.* ¶ 16). However, if the ACF balance was negative, Dale Group would be financially liable to HCC for that amount, but only up to a maximum amount of $350,000. (*Id.*). Pursuant to the Agency Agreement, Dale Group's $350,000 financial obligation was secured by an irrevocable letter of credit ("ILOC") that HCC could call upon any time there was a negative ACF balance, without any other conditions required. (*Id.* ¶ 17).

The Agency Agreement also contained the following waiver provision regarding Dale Group's right to challenge accountings of the ACF:

> Agent shall receive an accounting of the ACF within forty-five days (45) days after

> the end of each calendar quarter. Any disputes regarding such accounting shall be addressed with Company prior to Agent's receipt of the next scheduled accounting. Agent's failure to raise disputes within such time shall be construed as Agent's acceptance of such accounting and Agent shall be forever barred from raising any disputes not addressed with Company within the prescribed time at a later time.

(*Id.* ¶ 18).

For years, HCC regularly provided Dale Group with an accounting of the ACF (the "ACF Calculation") that listed the precise calculation of the ACF by tracking the ACF Formula. (*Id.* ¶ 19). These ACF Calculations were accompanied by backup documentation showing each bond loss payment or expense payment comprising the "Losses and Allocated LAE" portion of the ACF Formula/ACF Calculation. (*Id.* ¶ 20). Between 2005 and 2010, each time that Dale Group received an ACF Calculation, Dale Group accepted the calculation, and the ACF Formula contained within it, and did not raise any issues or concerns. (*Id.* ¶ 21). From 2007 through 2009, HCC distributed, and Dale Group accepted, numerous profit-sharing payments to Dale Group pursuant to the ACF Formula/ACF Calculation. (*Id.* ¶ 22). These profit-sharing payments were in addition to the commissions that HCC paid Dale Group pursuant to the Agency Agreement. (*Id.* ¶ 23).

Beginning in mid-2009, significant losses began to accumulate on Dale Group bonds. (*Id.* ¶ 24). As a result, the "Losses and Allocated LAE" item of the ACF Formula increased, and the ACF figure shifted from positive to negative. (*Id.*). By September 30, 2009, the negative ACF balance was $530,953.52, thus exceeding the $350,000 cap. (*Id.* ¶ 25). HCC continued to send Dale Group periodic ACF Calculations over the following year, during which Dale Group did not raise any questions or issues about the amount that it owed HCC. (*Id.* ¶ 26). HCC did not demand that Dale Group remit the money owed nor did HCC draw on the ILOC during this period. (*Id.* ¶ 27).

On or about March 17, 2010, the Agency Agreement was formally terminated. (*Id.* ¶ 28). Following the termination of the Agreement, on or about October 6, 2010, HCC forwarded Dale Group the ACF Calculation for the quarter ending September 30, 2010. (*Id.* ¶ 29). Based upon the negative ACF balance at that time, which surpassed the $350,000 cap, HCC demanded that Dale Group remit $350,000 and threatened to draw upon the ILOC. (*Id.*). For the first time, Dale Group questioned the ACF Formula and ACF Calculation and refused to pay the $350,000 demanded.[3] (*Id.* ¶ 30).

On October 11, 2011, just a few days after HCC made its demand for payment, Dale Group filed a four-count Complaint against HCC in the Superior Court of New Jersey, Morris County Law Division. (D.E. No. 1, Ex. A ("Compl.")). Count One of Dale Group's Complaint alleges that HCC breached the Agency Agreement by virtue of "wrongful conduct . . . generally consisting of: a) wrongfully terminating the Agency Agreement; b) interfering with plaintiff's customer relations; and c) violating fiduciary obligations to return funds owed to, and held in trust, for" Dale Group. (*Id.* ¶ 30). Count Two of the Complaint alleges that HCC breached the implied covenant of good faith and fair dealing in the Agency Agreement through the identical conduct alleged in Count One. (*Id.* ¶ 34). Finally, Counts Three and Four respectively allege tortious interference with economic advantage and negligence. (*Id.* ¶¶ 36-44).

On January 25, 2012, this action was removed to the United States District Court for the District of New Jersey. (D.E. No. 1). Thereafter, HCC filed an Answer and a three-count Counterclaim. (D.E. No. 7 ("Countercl.")). On May 9, 2014, HCC moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and it also moved to strike Dale

---

[3] Since then, loss activity on Dale Group bonds has continued to escalate, causing the ACF figure to become increasingly negative. (*Id.* ¶¶ 31-33). As of November 30, 2012, the ACF negative balance was $1,853,632.77, (*id.* ¶ 32), and as of December 31, 2013, the ACF negative balance was $1,904,414.13, (*id.* ¶ 33).

Group's proposed expert report. (D.E. No. 39). With respect to the summary judgment motion, HCC seeks judgment in its favor on Counts One and Three of its Counterclaim and the dismissal of Dale Group's Complaint with prejudice. (*Id.*).

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, a court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

On a summary judgment motion, the moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In opposing summary judgment, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party cannot rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Furthermore, the nonmoving party cannot rely on speculation and conclusory allegations to defeat summary judgment. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

## III.    Oral Argument

On January 14, 2015, the Court held oral argument on HCC's motion for summary judgment and resolved some of the issued raised by the parties. As a preliminary matter, the

Court noted that Dale Group appeared to have abandoned several claims by failing to address them in the opposition brief to HCC's summary judgment motion. (Oral Arg. Tr. at 3:5-13, 3:19-21, 7:9-11); *see also Desyatnik v. Atlantic Casing & Eng'g Corp.*, No. 03-5441, 2006 WL 120163, at *1 (D.N.J. Jan. 17, 2006) ("[W]hen a party fails to offer any argument or evidence . . . in opposition to defendants' motion for summary judgement, such claims may be deemed to have been abandoned." (internal quotation marks omitted)). Dale Group conceded that it had abandoned its claims that HCC breached the Agency Agreement by wrongfully terminating the Agreement and interfering with Dale Group's customer relations. (Oral Arg. Tr. at 3:8-22). Additionally, Dale Group conceded that it had abandoned its claims for tortious interference with economic advantage and negligence (i.e., Counts Three and Four of the Complaint). (Oral Arg. Tr. at 7:8-14, 42:4-13).

During oral argument, the Court also addressed Dale Group's new claim regarding HCC's alleged failure to maintain reinsurance. This claim was not raised in the Complaint, but rather surfaced for the first time in Dale Group's proposed expert report. (Oral Arg. Tr. at 6:9-16; *see also* Baron Decl. Ex. Y (Proposed Expert Report of Floyd C. Reynolds III) at 9). The Court ruled that it would not entertain this new claim because the claim was not alleged in the Complaint. (Oral Arg. Tr. at 6:17-7:6).

The Court then heard oral argument and reserved decision on Dale Group's remaining claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Finally, the Court heard oral argument and reserved decision on Counts One and Three of HCC's Counterclaim.

**IV.      Dale Group's Breach of Contract Claim**

The remaining component of Dale Group's breach of contract claim is that HCC breached the Agency Agreement by wrongfully withholding funds.[4] The Complaint alleges that "[u]nder the Agency Agreement HCC was permitted to hold a portion of the commission payments otherwise owed to the plaintiff in a . . . so-called 'margin' account, the purpose of which was to provide a pool of funds available to adjust claims on bonds issued for the account of HCC by the plaintiff." (Compl. ¶ 8). Furthermore, the Complaint alleges that Dale Group "requested release of the funds in . . . the 'margin' account. However, without any legal justification, HCC has failed and refused to pay those funds to plaintiff or to otherwise release them to satisfy claims and expense obligations." (*Id.* ¶ 10).

Dale Group's breach of contract claim turns on the meaning of the term "margin" in the Agency Agreement. The interpretation of the Agency Agreement in this case is governed by California law. (Agency Agr. ¶ 19). Under California law, the interpretation of a contract, including the determination of whether a term is ambiguous, is a legal question to be decided by the Court. *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125-26 (Cal. App. 2d Dist. 2008). A breach of contract claim requires the following four elements: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821

---

[4] According to HCC's moving brief, Dale Group also took the position during discovery that HCC breached the Agency Agreement by changing its underwriting standards. (D.E. No. 39-1, Brief in Support of Motion for Summary Judgment and to Strike Expert Report and Bar Testimony of Floyd C. Reynolds III ("Mov. Br.") at 19-20). The Complaint does not present any allegations with respect to a change in underwriting standards, and Dale Group clarified during oral argument that it does not seek to bring a separate breach of contract claim grounded on HCC's alleged change in underwriting standards. Rather, Dale Group explained that it believes HCC's "change in underwriting standards could constitute a violation of the covenant of good faith and fair dealing." (Oral Arg. Tr. at 5:6-8). Therefore, the only breach of contract claim before the Court is Dale Group's claim that HCC breached the Agency Agreement by wrongfully withholding funds.

9

(2011).

      Dale Group relies largely on verbal assurances to support its claim that HCC wrongfully withheld funds. (*See, e.g.*, D.E. No. 44, Brief in Opposition to Defendant's Motion for Summary Judgment ("Opp. Br.") at 9 ("The president of Dale Group recalls discussing this term ["margin"] with the president of HCC Surety and being told that margin was simply a reserve that was set aside for potentially large claims. If such claims did not materialize then margin would be divided equally between the parties.")). HCC, on the other hand, asserts that Dale Group's breach of contract claim must be dismissed because: (1) the Agency Agreement clearly and unambiguously defines the term "margin" as a fixed 15% deduction from premiums, and (2) any alleged verbal communications that contradict the Agency Agreement's definition of "margin" are inadmissible under the California parol evidence rule.[5] (Mov. Br. at 21-26).

      HCC is correct. The meaning of the term "margin" can be ascertained from the plain language of the Agency Agreement. Paragraph I of the Rider provides that HCC will withhold premiums earned for the quarter and use them to "settle the following expenses and costs." (Agency Agr. at 11, ¶ I). The Rider then lists the "expenses and costs" as expense/cost "a" through "d." Next to each expense/cost for "a" through "c" is a corresponding percentage of premiums to be withheld by HCC and used toward paying that expense/cost. (*Id.*). The unambiguous meaning of Paragraph I of the Rider is that "Margin – 15%" is an expense or cost, just like "Other

---

[5] HCC also argues that Dale Group is barred from challenging the ACF Formula/ACF Calculation in light of the waiver clause in the Agency Agreement, which provides that: "[a]ny disputes regarding such accounting shall be addressed with Company prior to Agent's receipt of the next scheduled accounting. Agent's failure to raise disputes within such time shall be construed as Agent's acceptance of such accounting and Agent shall be forever barred from raising any disputes not addressed with Company within the prescribed time at a later time." (Mov. Br. at 27 (quoting Agency Agr. at 11, ¶ III.a.)). Additionally, HCC argues that Dale Group is equitably estopped from challenging the ACF Formula/ACF Calculation, since Dale Group accepted payments under this formula for years. (*Id.* at 27 n.16). The Court does not address these arguments because HCC is entitled to summary judgment based on the clear and unambiguous language of the ACF Formula set forth in the Agency Agreement.

Underwriting and Administrative Expenses – 34%" and "Unallocated Loss Adjustment Expenses ["LAE"] – 5%," neither of which Dale Group challenges.  (*See id.*) (some formatting alterations).  As HCC correctly points out in its reply brief, the Agreement nowhere indicates that "margin" is a separate account of money to be set aside to pay claims.  (D.E. No. 45, Reply Brief in Further Support of Motion for Summary Judgment and to Strike Expert Report of Floyd C. Reynolds III ("Reply Br.") at 3-4).

Any alleged verbal communications that Dale Group's President had with HCC's President are inadmissible under California's parol evidence rule, which bars the introduction of extrinsic evidence to contradict the unambiguous terms of a contract.  *See* Cal. Code Civ. Proc. § 1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."); Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.").  As the California Supreme Court explained in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n*, the parol evidence rule "is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement.  The written terms supersede statements made during the negotiations.  Extrinsic evidence of the agreement's terms is thus *irrelevant*, and cannot be relied upon."  55 Cal. 4th 1169, 1174 (2013).

In its opposition brief and during oral argument, Dale Group contested the application of California's parol evidence rule and asserted that extrinsic evidence is admissible in this case under Cal. Code Civ. Proc. § 1856(f), which sets forth an exception to the operation of the parol

11

evidence rule. The Court disagrees. Section 1856(f) provides that "[w]here the *validity* of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue." Cal. Code Civ. Proc. § 1856(f) (emphasis added). In this case, Dale Group does not dispute the validity of the Agency Agreement. In fact, it has sued HCC for breaching this very agreement. Accordingly, Dale Group cannot avail itself of § 1856(f), and the Court declines to consider any extrinsic evidence contradicting the terms of the Agency Agreement.

Given the Agency Agreement's clear and unambiguous definition of the term "margin" as a fixed 15% deduction from premiums, HCC did not wrongfully withhold funds from Dale Group. The Court concludes that there is no genuine issue of material fact and that HCC is entitled to summary judgment dismissing Count One of the Complaint with prejudice.

**V.     Dale Group's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

Count Two of Dale Group's Complaint alleges that HCC breached the implied covenant of good faith and fair dealing in the Agency Agreement. Count Two relies on the identical conduct alleged in Count One of the Complaint. (*See* Compl. ¶ 34 ("By virtue of the conduct described above, including its failure and refusal to refund to plaintiff the sums being held in the margin fund, defendant HCC has breached the implied covenant of good faith and fair dealing in the Agency Agreement.")).

To assert a claim for breach of the implied covenant of good faith and fair dealing, "a plaintiff must identify the specific contractual provision that was frustrated." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (quoting *Perez v. Wells Fargo Bank, N.A.*, No. 11-02279, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011)). Because Count Two does not identify a particular contractual provision that was frustrated, HCC is entitled to

summary judgment dismissing Count Two of the Complaint with prejudice.[6]

**VI.     HCC's Breach of Contract Claim**

Count One of HCC's Counterclaim alleges that Dale Group breached the Agency Agreement by "failing to fulfill its financial responsibility to HCC for the ACF negative balance, and, additionally failing to pay to HCC customer premiums as required under the Agency Agreement." (Countercl. ¶ 17).  In moving for summary judgment, HCC argues that there are no genuine issues of fact in dispute and asserts that: (1) an enforceable contract exists between the parties; (2) HCC has performed its obligations under the contract; (3) Dale Group breached the Agency Agreement, as it is financially responsible for any negative ACF balance, the balance has been negative for years, and Dale Group has not paid the $350,000 owed; and (4) HCC is entitled to $350,000 in compensatory damages plus prejudgment interest and attorneys' fees.  (*See* Mov. Br. at 12-16).

As noted above, a breach of contract claim requires the following four elements:  (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach, and (4) the resulting damages to the plaintiff.  *Oasis W. Realty, LLC*, 51 Cal. 4th at 821.  HCC's breach of contract claim satisfies these four elements.

As to the first element, it is undisputed that an enforceable contract exists between the parties.  Dale Group does not contest the validity of the Agency Agreement, as it brought a breach

---

[6] As noted above, Dale Group asserted during oral argument that it also believed HCC's alleged "change in underwriting standards could constitute a violation of the covenant of good faith and fair dealing." (Oral Arg. Tr. at 5:6-8).  However, Dale Group has not established a violation of the implied covenant of good faith and fair dealing, since it did not point to a specific contractual provision that was frustrated as a result of HCC's alleged change in underwriting standards.  Dale Group also argues in its opposition brief that HCC breached the implied covenant of good faith and fair dealing through negligent claims handling. (Opp. Br. at 19).  Once again, because Dale Group does not identify a specific contractual provision that was frustrated as a result of HCC's alleged conduct, Dale Group has not established a violation of the implied covenant of good faith and fair dealing.

of contract claim to enforce this agreement.

As to the second element, HCC performed its obligations under the Agency Agreement: it provided Dale Group with limited underwriting authority, issued and delivered the bonds that Dale Group executed within that authority, paid Dale Group all of the commission that Dale Group earned, and paid Dale Group over $500,000 when the ACF figure was positive. Dale Group does not dispute that HCC performed these duties. (*See* Oral Arg. Tr. at 49:18-21).

As to the third element, Dale Group has breached the Agency Agreement. The plain language of the Agreement sets forth that the only condition for HCC's right to payment is that the ACF balance is negative. (*See* Agency Agr. at 12, ¶ V; *id.* at 13, ¶ IV). The ACF balance has been negative for years, and Dale Group's failure to fulfill its financial responsibility constitutes a breach of the Agency Agreement.

As to the fourth element, HCC is entitled to $350,000 in compensatory damages based on the negative ACF figure, which, as of December 31, 2013, was nearly $2 million. (Def. 56.1 Statement ¶ 33). HCC is also entitled to prejudgment interest of 10% per annum under California law. *See* Cal. Civ. Code §§ 3287(a), 3289(b); Cal. Code Civ. Proc. § 685.010. Dale Group has owed HCC the full $350,000 since at least September 30, 2009, which is when the negative ACF balance was at $530,953.52. (Def. 56.1 Statement ¶ 25). Accordingly, HCC is entitled to receive prejudgment interest at the rate of 10% per annum starting from September 30, 2009. Finally, HCC is entitled to attorneys' fees under the indemnification provision of the Agency Agreement. (*See* Agency Agr. ¶ 13 (providing that HCC is entitled to "attorneys' fees" due to Dale Group's "breach of the terms of this Agreement")).

### VII. HCC's Declaratory Judgment Claim

Count Three of HCC's Counterclaim seeks a declaratory judgment pursuant to the Federal

Declaratory Judgment Act, 28 U.S.C. § 2201, and the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 *et seq.* (Countercl. ¶ 28). In particular, HCC seeks a judgment declaring "that HCC has an absolute right to draw on the ILOC given the ACF is at a negative balance and that Dale Group has no right to oppose, hinder, bar, enjoin or otherwise object to HCC's draw on the ILOC." (*Id.*). Granting a declaratory judgment in this case would be duplicative, given the Court's resolution of HCC's breach of contract claim in HCC's favor. Because the Court grants HCC summary judgment on its breach of contract claim, the Court denies HCC's declaratory judgment claim as moot.

## VIII. Conclusion

For the reasons set forth above, the Court grants HCC's motion for summary judgment dismissing Dale Group's Complaint with prejudice. Furthermore, the Court grants summary judgment in HCC's favor with respect to Count One of its Counterclaim. For the reasons set forth above, the Court denies as moot: (1) HCC's motion for summary judgment on Count Three of its Counterclaim; and (2) HCC's motion to strike Dale Group's proposed expert report. An appropriate order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**